UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| R2H2 HOLDINGS, LLC, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:24-CV-00050-MAS |
| ) | |
| ANNESTES FARMS, LLC, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION & ORDER**

At the center of the parties' cross-motions for summary judgment lies one overarching question: who breached the contract first? Defendant Annestes Farms, LLC contends it is excused from its contractual obligation to install eight palladium barn windows following the sale of its farm to Plaintiff R2H2 Holdings, LLC. Both sides allege breach of contract; both seek damages. The parties have filed renewed motions for summary judgment, which are fully briefed and ripe for review.

### I. BACKGROUND

The subject farm is a 383-acre property located at 2829 Clifton Road in Woodford County, Kentucky ("the Farm"). On November 29, 2023, Defendant Annestes Farms, LLC ("Annestes Farms") by its agent, George Hall, signed a document titled "Farm Offer to Purchase (Contract)" ("First Farm Offer to Purchase") offering to sell the property to Grandview Creekview Estate, LLC ("Grandview") for

$6.1 million. The offer required acceptance "on or before November 30, 2023, at 9:00 p.m. EST." [DE 47-4, PageID 1203]. Grandview did not meet that deadline. Its agent, Ryan Conner, signed the offer electronically the next morning, on December 1, 2023. [DE 47-5, PageID 1207].

On December 1, 2023, Annestes Farms extended a second offer relating to the sale of the Farm ("Second Farm Offer to Purchase"). That document, dated December 1, 2023, largely resembled the prior offer but included revised language regarding the personal property to be conveyed. For instance, the First Farm Offer to Purchase stated that the sale included

> Refrigerators, ranges, microwaves, dishwasher, washer, dryer, window treatments, blinds, in all houses, and barns, and all farm equipment (except recreational vehicles) . . . [and] All contents of shop including tools and other articles, office furniture, including pool table . . .

[DE 47-2, PageID# 1187]. The Second Farm Offer to Purchase, by contrast, itemized a similar but limited set of conveyances:

> Refrigerators, ranges, microwaves, dishwashers, dryer, window treatments, blinds in all houses and barns, office furniture, including pool table, tools in shop owned by Seller and farm equipment owned by Seller (but not including any recreational vehicles, ATVs, horse trailers, or motorcycles).

[DE 47-3, PageID# 1193].

Both Annestes Farms and Grandview executed the Second Farm Offer to Purchase on December 1, 2023. [DE 47-3, PageID# 1193]. They subsequently executed two amendments. The first, dated December 13, 2023 ("December 13 Amendment"), added a new term requiring Annestes Farms to "pay for and install the 8 palladium windows." [DE 47-4, PageID 1199]. The second, signed on December

15, 2023 ("December 15 Amendment"), acknowledged that the windows had been ordered and clarified that the windows "will be installed upon receipt at Seller's sole expense." [DE 47-6, PageID 1204]. The same amendment also expressly permitted assignment. That same day, Grandview assigned its rights under the contract, as amended, to Plaintiff R2H2 Holdings, LLC ("R2H2 Holdings"). [DE 47-7, PageID 1206].

Closing occurred on December 19, 2023. The Second Farm Offer to Purchase gave Annestes Farms through December 31, 2023, to remove personal property not conveyed. [DE 47-3, PageID# 1195]. After that date, all remaining property would belong to the buyer. The deal deteriorated almost immediately. On or around December 20, 2023, Annestes Farms' agent, Lolo Amezquita, entered the Farm and removed a 2013 Ford F-350 truck and a horse trailer. Believing that the truck had been conveyed as part of the sale, an agent of R2H2 Holdings directed its lessee to call law enforcement and to padlock the entrance gates to the Farm.

Annestes Farms claimed that R2H2 Holdings' locking of the gates interfered with its access to the property. According to Hall, Annestes Farms' contractor, Jan Basson, had already fabricated and installed one palladium window and that "the plan was to build and install eight additional ones." [DE 46-2, PageID# 1069]. However, Hall testified that Basson was unable to access the property due to the Farm being locked. R2H2 Holdings maintains that it would have granted access had Annestes Farms or its agents asked—and R2H2 Holdings asserts they did not ask. [DE 50, PageID# 1274]. Annestes Farms ultimately never installed the remaining

palladium barn windows. In early 2024, R2H2 Holdings' lessee, Tolo Thoroughbreds Inc., retained Nossab LLC (Basson's company) to fabricate and install five palladium windows.[1] The total cost for fabrication, installation, and finishing was $60,545. To date, Annestes Farms has not reimbursed any portion of that amount. [DE 46, PageID# 997; DE 50, PageID 1274].

## II. **PROCEDURAL HISTORY**

R2H2 Holdings originally filed this action alleging breach of contract and unjust enrichment in Woodford Circuit Court on January 24, 2024. [DE 1-1]. Annestes Farms removed the case on February 19, 2024, filed its answer, and asserted a breach of contract counterclaim the same day. [DE 1 & 3]. R2H2 Holdings then filed a First Amended Complaint on May 1, 2024. [DE 12].

After discovery closed, the parties moved for summary judgment. [DE 32 & 36]. While those motions were being briefed, R2H2 Holdings sought leave to file a Second Amended Complaint, explaining that it sought to pursue its breach-of-contract theory whether the operative contract is the First Farm Offer to Purchase or Second Farm Offer to Purchase. [DE 41, PageID# 941–943]. The Court granted R2H2 Holdings' request and denied the pending summary-judgment motions without prejudice. [DE 42, PageID# 950–957]. R2H2 Holdings filed its Second Amended Complaint the same day, and Annestes Farms again answered and reasserted its counterclaim. [DE 43, PageID# 960–965; DE 45, PageID# 971–976].

---

[1] Nossab LLC issued an invoice to "Annestes Farm – Grantley Acres" for five barn windows on "2/15". Tolo Thoroughbreds paid a $25,000 deposit by check dated March 16, 2024, and paid the remaining $29,975 by check dated July 30, 2024. [DE 46-3, PageID# 1157–58].

Page **4** of **20**

After the pleadings closed, the parties renewed their motions for summary judgment. R2H2 Holdings moves for partial summary judgment on its claim that Annestes Farms breached the Second Farm Offer to Purchase by failing to install palladium windows, resulting in damages arising from its having to pay $60,545 to have them installed itself. [DE 46]. It also seeks attorneys fees. Annestes Farms responded that R2H2's breach of contract claim as to the windows fails because it denied Annestes Farms access to the property and the contract likewise did not establish a deadline for installing the windows. In its own motion, Annestes Farms seeks dismissal of R2H2 Holdings' breach of contract and unjust enrichment claims as a matter of law. [DE 47-1].

### III. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to

produce "specific facts" showing a "genuine issue" for trial. *See id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. Then, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission—but not necessarily admissible—into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

### IV. ANALYSIS

**A. THE CONTROLLING CONTRACT IS THE DECEMBER 1 SECOND OFFER AND ITS AMENDMENTS**

Preliminarily, R2H2 Holdings contends that it makes no difference whether the First or Second Farm Offer to Purchase governs the farm sale, emphasizing that the barn window obligations arise from subsequent amendments. But amendments do not exist in isolation. Rather, when a written amendment is intended to modify or extend the terms of an original agreement, it must be construed together with that agreement to give effect to the parties' intent. *Kentucky Home Mut. Life Ins. Co. v. Leitner*, 302 Ky. 789, 795, 196 S.W.2d 421, 424 (1946) (holding that an amendment

provision is "as much a part of the contract as any other contained therein"); *Distillery Rectifying & Wine Workers Int'l Union of Am. v. Brown-Forman Distillers Corp.*, 308 Ky. 380, 385, 213 S.W.2d 610, 613 (1948) (concluding that the amendment must be read with the base contract, which it extended "in its entirety").

Kentucky courts have also affirmed the broader principle of incorporation by reference, under which multiple writings may be read as one integrated agreement if they collectively reflect mutual assent. *Univ. of Kentucky v. Regard*, 670 S.W.3d 903, 912 (Ky. 2023). The Kentucky Supreme Court has emphasized that the power to modify a contract is inseparable from the power to form one, and such modifications are part of the continuing contractual relationship. *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (citing *Vinaird v. Bodkin's Adm'x*, 254 Ky. 841, 72 S.W.2d 707, 711 (1934)).

Although the motions primarily concern the language in the December 13 and December 15 Amendments regarding the installation of windows, the Court must consider the agreement as a whole to give full effect to the parties' intent. *See Ky. Home Mut. Life Ins. Co.*, 302 Ky. at 795. Accordingly, the Court begins by addressing whether a genuine dispute of material fact exists as to which contract governs.

A valid contract requires mutual assent supported by an offer, acceptance, consideration, and definite terms. *Ky. Emps. Ret. Sys. v. Seven Cntys. Servs., Inc.*, 580 S.W.3d 530, 542 (Ky. 2019). An offer imposes no obligation unless it is accepted strictly in accordance with its terms. *Walton's Ex'r v. Franks*, 191 Ky. 32, 228 S.W. 102, 104 (1921). Where an offer specifies a deadline for acceptance, it expires at the

end of that period, and any acceptance thereafter is legally ineffective. *Caldwell v. E.F. Spears & Sons*, 186 Ky. 64, 216 S.W. 85, 87 (1919) (quoting 13 *Corpus Juris* 297) ("[A] limitation of time within which an offer is to run being equivalent to the withdrawal of the offer at the end of the time named."). An acceptance made after expiration is not an acceptance at all; it constitutes a counteroffer. *A & A Mech., Inc. v. Thermal Equip. Sales, Inc.*, 998 S.W.2d 505, 511 (Ky. Ct. App. 1999).

In its Second Amended Complaint, R2H2 Holdings pleads both the First and Second Farm Offer to Purchase as the operative contract in the alternative. But there is no genuine dispute that the First Farm Offer to Purchase was never validly accepted. That offer expressly stated: "This Offer to Purchase expires on 12/1/2023 at 9:00 AM." [DE 43-1]. Conner did not sign the document until 10:53 a.m. on December 1, 2023—nearly two hours after the deadline. [DE 43-1]. Such an untimely acceptance cannot create a binding contract. *Caldwell*, 216 S.W. at 87.[2]

---

[2] Even if the First Farm Offer to Purchase had not lapsed, it would have been superseded by any subsequent executed contract. When parties execute a second agreement addressing the same subject matter, the later contract may supersede the first if it is clearly intended to replace it or renders performance of the earlier agreement impossible. *LP Louisville Quinn Drive, LLC v. Leonard-Ray*, 704 S.W.3d 386, 393 (Ky. Ct. App. 2025) (quoting *GGNSC Louisville St. Matthews LLC v. Badgett*, 728 F. App'x 436, 442 (6th Cir. 2018)) (an implied novation arises when "the new contract is manifestly in place of or inconsistent with a former one, or . . . renders a former contract impossible of performance."); *HBKY, LLC v. Kingdom Energy Res., LLC*, 726 F. Supp. 3d 727, 734 (E.D. Ky. 2024) (quoting *HBKY, LLC v. Kingdom Energy Res., LLC*, Civ. No. 6:21-cv-00101-GFVT, 2022 WL 2338497, at *4, 2022 (E.D. Ky. June 27, 2022)) ("[A] novation occurs . . . when the terms of a contract are modified with the intent to replace the original contract[.]"); *White/Reach Brannon Rd., LLC v. Rite Aid of Ky., Inc.*, 488 S.W.3d 631, 638 (Ky. Ct. App. 2016) (citing *Menefee v. Rankins*, 158 Ky. 78, 164 S.W. 365, 367 (1914)) (a complete and integrated second contract is "conclusively presumed to supersede" a prior agreement on the same subject).

Here, the parties executed the Second Farm Offer to Purchase on December 1, 2023. [DE 43-2]. The document specified that it must be accepted by December 2, 2023, at 12:00 p.m. Conner signed the document on December 1, 2023 at 2:33 p.m. and Hall signed the document on December 1, 2023, at 2:52 p.m., both well within the stated timeframe. [DE 43-2]. Accordingly, the Second Farm Offer to Purchase, accepted on December 1, 2023 (hereinafter, "December 1 Contract), governs the sale of the Farm.

Following execution of the December 1 Contract, the parties executed two written amendments dated December 13 and December 15, 2023. The December 13 Amendment provides that the "Buyer and Seller agree to amend the contract to reflect that Seller will pay for and install the 8 palladium windows." [DE 47-4, PageID# 1199]. The December 15 Amendment modified that obligation, providing that the "Seller hereby acknowledges that 8 palladium windows have been ordered and will be installed upon receipt at Seller's sole expense." [DE 47-6, PageID# 1204]. There is no dispute among the parties as to their validity or applicability to the transaction. Accordingly, the Court finds that the December 1 Contract, together with the December 13 and December 15 Amendments, constitute the operative agreement governing the sale of the Farm (collectively "Farm Sale Contract").

B. **PARTIAL SUMMARY JUDGMENT IS PRECLUDED ON R2H2 HOLDINGS' WINDOW INSTALLATION CLAIM**

Having established the contours of the operative contract, the Court turns to whether summary judgment is appropriate as to R2H2's breach of contract claim. To prevail, R2H2 must establish the existence of a valid contract, a breach of that

contract, and resulting damages. *House v. Players' Dugout, Inc.*, 440 F. Supp. 3d 673, 682 (W.D. Ky. 2020) (citing *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009)). A party's failure to perform a contractual obligation that has become due constitutes a breach unless excused. *Dalton v. Mullins*, 293 S.W.2d 470, 476 (Ky. 1956).

Annestes Farms contends that its performance as to the window installation was excused either because R2H2 materially breached first by denying access to the property, or because its obligation had not yet ripened due to the absence of a deadline in the December 15 Amendment.

### 1. <u>Annestes Had a Definite Obligation to Perform Within a Reasonable Time</u>

R2H2 Holdings alleges that Annestes Farms breached the Farm Sale Contract by failing to either install or pay for eight palladium barn windows. Annestes responds that the agreement did not set a deadline and thus its obligation never matured. [DE 47-1, PageID# 1183]. But under Kentucky law, when a contract is silent as to the time of performance, a reasonable time is implied. *Dalton*, 293 S.W.2d at 476; *Carhartt Holding Co. v. Mitchell*, 261 Ky. 297, 87 S.W.2d 375, 378 (1935). "[W]hat is a reasonable time is to be determined by the facts and circumstances of each case." *Liggett Grp., Inc. v. Com.*, 232 S.W.3d 559, 563 (Ky. Ct. App. 2007) (citing *Carhartt Holding Co.*, 261 87 S.W.2d at 378). While usually a question of fact, the court may decide it as a matter of law when the facts are undisputed. *Stratton & Terstegge Co. v. Criswell*, 290 Ky. 64, 160 S.W.2d 137, 139 (1942).

The December 15 Amendment provides that the windows "will be installed upon receipt at the Seller's sole expense." [DE 47-6, PageID# 1204]. R2H2 Holdings maintains that this provision created an obligation such that, once the windows were available, Annestes Farms had to perform. [DE 46, PageID# 990–91]. Nearly two years have passed since the parties executed the amendment. Despite that lapse, the record contains no evidence that Annestes Farms installed the windows, reimbursed R2H2 Holdings for doing so, or took meaningful steps to complete the work after closing the sale on the Farm. Even if R2H2 Holdings' decision to lock the Farm gates in December 2023 temporarily prevented access, nothing in the record shows that Annestes Farms or its contractor attempted to resume performance in 2024 or verify whether "receipt" of the windows had occurred.[3] Instead, the Farm's lessee, Grantley Acres, through its affiliate Tolo Thoroughbreds hired Basson's company, Nossab LLC, to complete the fabrication and installation. [DE 46-1, PageID# 987–88; DE 50, PageID# 1278].

When a contract does not fix a time for performance, Kentucky law presumes the parties contemplated a time that was fair and practicable under the circumstances. *Kirkpatrick v. Lebus*, 184 Ky. 139, 211 S.W. 559, 561 (1919). Given the straightforward nature of the installation obligation, a delay of this length,

---

[3] Although the December 15 Amendment provides that "8 palladium windows *have been ordered*," [DE 47-6, PageID# 1204] (emphasis added), suggesting that Annestes Farms had already placed the order for the windows to be fabricated, Hall testified that he did not "believe" Basson ever billed him or charged him for the replacement of barn windows after December 19, 2023. [DE 46-2, PageID# 1069]. The tension between these facts raises questions regarding the extent of Annestes' Farms performance that cannot be resolved on this record.

coupled with the absence of any meaningful explanation or effort by Annestes Farms to act, supports the conclusion that the obligation ripened long ago.[4] However, because the record contains unresolved factual disputes—particularly regarding when the windows were fabricated, whether the triggering event of "receipt" occurred, and whether Annestes Farms was denied meaningful access to the property—the Court cannot determine as a matter of law when, if at all, a breach occurred. While the Court holds as a matter of law that Annestes Farms was required to perform within a reasonable time despite the contract's silence as to a deadline for completion, it cannot resolve as a matter of law the merits of R2H2 Holdings' breach of contract claim.

   2.   **Genuine Dispute of Material Facts Remain as to Whether R2H2 Holdings' Acts Excused Annestes Farms' Performance**

Annestes Farms does not dispute that it did not install the remaining windows or reimburse R2H2 Holdings for the cost of doing so. But it argues that R2H2's own material breach barred access to the property and excused its performance. [DE 49, PageID# 1236].

Hall testified that Basson had previously installed one window and returned on or around December 20, 2023, to install the others, only to find the gates locked. [DE 51-3, PageID# 1371]. Hall learned that R2H2 Holdings restricted access to the

---

[4] The record supports multiple plausible inferences, including that the windows were fabricated by December 20, 2023, and could have been installed shortly thereafter, or that fabrication never occurred because Hall decided not to proceed with the installation. *See* [DE 46-1, PageID# 1006]. Given the lack of clarity on both fabrication and when access to the Farm was restored, genuine disputes of material fact remain as to whether Annestes Farms breached the Farm Sale Contract.

Farm after Annestes Farms' agent removed a Ford F-350 and a horse trailer—items Annestes Farms maintains were excluded from the sale. Geoff Nixon, owner of Grantley Acres and R2H2 Holdings' agent, testified that the truck was listed in the contract as an "outside vehicle" that should have conveyed with the Farm. [DE 50-4, PageID# 1322]. At Nixon's direction, a Tolo Thoroughbreds employee contacted law enforcement and locked the gates shortly after the truck's removal. [DE 50-4, PageID# 1322–23].

These competing narratives give rise to several material factual disputes. First, it remains unclear whether Annestes Farms committed the first material breach when its agent removed the Ford truck and horse trailer from the property. Second, and closely related, the record does not clearly establish whether R2H2 Holdings materially breached first by locking Annestes Farms and its agents out of the property. Resolving these issues will require further factual development concerning the contract provisions governing the transfer of personal property—provisions that the parties have largely glazed over, addressing them only in passing while focusing on the window installation clause in the December 15 Amendment.

Third, it is unclear when, if ever, Annestes Farms regained access to the Farm. R2H2 Holdings claims access was restored by December 31, 2023, citing a January 19, 2024 letter from defense counsel. [DE 46, PageID# 991]. Moreover, R2H2 Holdings asserts that the window contractor could have returned at anytime, had Annestes Farms only requested. [DE 50, PageID# 1274].

Annestes Farms argues the January 19 letter constitutes a settlement communication and cannot be used to resolve a disputed factual issue, relying upon on *Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438 (6th Cir. 2010). [DE 49, PageID# 1238–40]. However, Annestes Farms offers no alternative date for which it regained access to the property. Nixon also testified that Basson eventually installed five windows, but only after Hall indicated to Nixon that Annestes Farms would no longer proceed and Tolo Thoroughbreds retained Basson to finish the job. [DE 46-3, PageID# 1157–58; DE 50-4, PageID# 1329].

Finally, the record does not clearly establish whether the restriction materially interfered with Annestes Farms' ability to perform. Under Kentucky law, performance is excused where a party prevents or materially impedes it. *Dalton*, 293 S.W.2d at 476. Annestes Farms claims the restrictions imposed by R2H2 Holdings obstructed its contractor's attempts to perform the window installation. R2H2 Holdings contends the interference was brief and justified due to the disputed vehicle and trailer removal. There is no evidence that Annestes Farms or its contractor attempted to return after Basson's first attempt to enter the Farm on or around December 20, 2023, nor is there any indication R2H2 Holdings was notified that restrictions to such access were removed. However, R2H2 Holdings argues that it would have permitted the contractor to return to install the windows upon request but provides no evidentiary support for its assertion.

These factual disputes preclude summary judgment in either party's favor. The finder of fact must determine which party breached the contract first and,

subsequently, whether Annestes Farms' nonperformance can be excused in light of that factual determination.

### 3. Election of Remedies Does Not Foreclose the Excuse Defense

R2H2 Holdings argues that Annestes Farms, by seeking damages rather than rescission, elected to affirm the contract and is therefore estopped from asserting that its obligations were discharged. [DE 46, PageID# 993–95]. Kentucky requires that a non-breaching party elect between rescission and affirmance following a material breach. *See O'Bryan v. Mengel Co.*, 224 Ky. 284, 6 S.W.2d 249, 251 (1928) (requiring that the non-breaching party "make an election at the time the situation arose"). It is undisputed that Annestes has chosen the latter, having repeatedly asserted a contract-based counterclaim.

But this election does not extinguish an otherwise valid defense to performance. A party may be excused from performance if the other party materially interfered with that performance. *Dalton*, 293 S.W.2d at 476. The election-of-remedies doctrine concerns the remedies a party may seek, not whether a contractual duty has been discharged. If R2H2 Holdings' conduct rendered performance impossible, then Annestes Farms' subsequent decision to pursue damages does not cure the underlying interference. *See Columbian Fuel Corp. v. Skidmore*, 308 Ky. 388, 214 S.W.2d 761, 764–65 (1948); *Dalton*, 293 S.W.2d at 476.

Kentucky courts recognize that a party to a contract may not hinder or obstruct the other's performance. When that occurs, the interference constitutes a breach that relieves the other party of its obligation to continue. *Columbian Fuel Corp.*, 214 S.W.2d at 764. In *Columbian Fuel Corp.*, the Kentucky Court of Appeals held that

the company had "an implied promise or undertaking . . . that it would do nothing which would hinder or obstruct Skidmore in the performance of his contract." When the company broke that promise, the court found it "constituted a breach and repudiation of the contract, and relieved the other party of his commitment to [perform]." 214 S.W.2d at 764 (citing *Cadillac Oil & Gas Co. v. Robert Lovelace & Co.*, 198 Ky. 267, 248 S.W. 883, 883 (1923); *Texas Granite Oil Co. v. Williams*, 199 Ky. 146, 250 S.W. 818, 819–20 (1923))

This distinction between rescission and excuse is further underscored in *Hall v. Rowe*, 439 S.W.3d 183 (Ky. App. 2014), which provides that a material breach by one party excuses the other's obligation to perform, unless that party elects to continue under the contract. *See id.* at 187 (quoting *Dalton*, 293 S.W.2d at 476). In *Hall*, the Kentucky Court of Appeals reversed summary judgment that enforced a contract despite evidence that the plaintiff had materially breached first by failing to pay as agreed. The court emphasized that, when a party materially breaches an agreement, the non-breaching party is "excused from further performance," unless it chooses to proceed under the contract despite the breach. *Id.*

Critically, *Hall* does not suggest that electing to sue for damages precludes a party from asserting an excuse defense to its own alleged nonperformance. *Hall* distinguishes waiver from excuse and explains that a party may lose the excuse defense only if it elects to proceed under the contract with knowledge of the breach. *Id.* at 188. This rule reinforces the principle that excuse turns on whether a duty to perform ever persisted, not on whether a party seeks rescission or damages. Thus,

Page **16** of **20**

the assertion of a counterclaim for breach does not foreclose a defense that the plaintiff's prior interference discharged the defendant's obligations altogether.

R2H2 Holdings' reliance on *O'Bryan* is also misplaced. That case involved a buyer who, after accepting several allegedly defective installments, chose to continue the contract and then committed a material breach himself by purchasing goods from another supplier in violation of an exclusivity clause. The court held that once the buyer elected to affirm, he was not entitled to breach the contract and still hold the seller liable for failing to perform afterward. *See O'Bryan*, 6 S.W.2d at 252. But *O'Bryan* does not address situations like this one where a party seeks to excuse nonperformance based on the other party's obstruction. Unlike in *O'Bryan*, Annestes Farms does not claim it was entitled to both breach the contract and hold R2H2 liable. Instead, it contends its performance was made impossible by R2H2 Holdings' own conduct and alleged breach.

Moreover, R2H2 Holdings' argument presupposes that Annestes Farms had a meaningful opportunity to complete the window installation after the alleged interference. But as previously discussed, the record presents a genuine dispute as to whether R2H2 Holdings' actions prevented Basson or any other contractor from returning to the property to perform. Hall testified that Basson was barred from accessing the farm on or around December 20, 2023, which prevented completion of the window installation. *See* [DE 51-3, PageID# 1371–72]. R2H2 Holdings asserts that any denial of access was brief, justified by Annestes Farms' alleged breach by

theft of personal property, and would have been lifted upon request. *See* [DE 50, PageID# 1278].

In sum, as a matter of law, Annestes Farms is not foreclosed from pursuing damages for its own breach of contract claim, nor asserting R2H2 Holdings' own alleged breach as an excuse for nonperformance. The merits of its claim and its purported excuse, however, is a factual question that the Court cannot resolve on summary judgment.

## C. SUMMARY JUDGMENT ON UNJUST ENRICHMENT CLAIM IS IMPROPER

Annestes Farms moves for summary judgment on R2H2 Holdings' unjust enrichment claim, conclusorily arguing that the existence of a contract forecloses equitable relief. [DE 47-1, PageID# 1185]. In Kentucky, unjust enrichment is an equitable doctrine that applies when a party confers a benefit on another in the absence of an enforceable contract. *See Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 777 (Ky. 2017). Recovery requires proof that (1) a benefit was conferred, (2) the recipient appreciated the benefit, and (3) it would be inequitable to retain the benefit without compensating the claimant. *Id.* at 778.

Although Kentucky courts do not permit recovery in unjust enrichment when an express contract governs the subject matter of the dispute, the doctrine remains available where the existence or enforceability of the contract is genuinely in question. *See Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977). In this case, both parties agree that a written contract governs the core transaction. R2H2 Holdings nevertheless pleads unjust enrichment, preserving the

theory in the event the Court (or jury) declines to enforce the written agreement or concludes that a benefit conferred upon Annestes Farms falls outside its scope.

Annestes Farms has not attempted to identify the specific benefits for which R2H2 Holdings seeks recompence or to demonstrate that those benefits are fully addressed by the contract as a matter of law. Nor has Annestes Farms shown that there is no genuine dispute of material fact regarding whether it retained such benefits inequitably. This limited showing does not satisfy Rule 56. To obtain summary judgment, the moving party must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file" that show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Annestes has not done so here. It offers no evidence or developed argument negating any element of R2H2 Holdings' unjust enrichment claim. *See Anderson*, 477 U.S. at 255; *Celotex Corp*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."). A bare assertion that the claim is barred does not suffice. Accordingly, because Annestes Farms has not shown the absence of a genuine issue of material fact or demonstrated that it is entitled to judgment as a matter of law on the unjust enrichment claim, its motion for summary judgment on must be denied.

## V. CONCLUSION

For the reasons stated above, the Court concludes that genuine disputes of material fact preclude summary judgment. Although the Court holds as a matter of law that the Second Farm Offer to Purchase, along with the December 13 and 15

Amendments, form a valid and enforceable contract, and that Annestes was obligated to perform within a reasonable time, factual disputes remain as to when certain obligations came due and whether Annestes' performance can be excused. Accordingly,

**IT IS ORDERED** that Plaintiff's Renewed Motion for Partial Summary Judgment [DE 46] and Defendant's Second Motion for Summary Judgment [DE 47] are **DENIED**.

Signed this the 8th of July, 2025.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY